UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

SIMON OLIVER,                       )
                                    )
        Petitioner,                 )
                                    )        No. 6:10-CV-21-GFVT-HAI
v.                                  )
                                    )        RECOMMENDED DISPOSITION
PHILLIP PARKER, Warden,             )
                                    )
        Respondent.                 )
                                    )
                                    )

*** *** *** ***

On January 21, 2010, pro se Petitioner Simon Oliver filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  (D.E. 1).  Because the petition was not submitted on a standard form, the Court ordered Petitioner to submit a corrected petition.  (D.E. 2).  Petitioner timely complied with the Court's Order and submitted a properly filed section 2254 petition. (D.E. 5).  Respondent Warden Phillip Parker filed a response in opposition.  (D.E. 16).  The Court permitted Petitioner to file a reply brief, (D.E. 17), but Petitioner did not reply.

The petition is ripe for consideration, and the District Judge referred the matter to the undersigned for a recommended disposition.  For the reasons articulated below, the Court **RECOMMENDS** that the District Judge **DENY** Petitioner's request for habeas relief.

## I. Background Information

### A. Factual History[1]

On May 18, 2004, Petitioner Simon Oliver engaged in an argument with his ex-wife Sandra, during which Petitioner caused his young daughter to fall down an embankment near his

---

[1]     The Court reiterates the factual information detailed in *Oliver v. Commonwealth*, 2005-SC-000864-MR, at 1-3 (Ky. Sept. 18, 2008) (unpublished).  This opinion is available at Docket Entry #16-5.

home.  Petitioner retrieved his daughter and brought her into the bathroom to clean her up after this fall.  While Petitioner was cleaning his daughter, Petitioner's ex-wife entered the bathroom and struck Petitioner with a baseball bat.  Petitioner wrestled the bat from his ex-wife and struck her with it several times.  Then, according to the evidence at trial, Petitioner choked his ex-wife, placed her body in the bathtub, and ran water down her throat.

Having left his ex-wife in the bathroom of his apartment, Petitioner then drove away with his young daughter; at one point in his travels, Petitioner drove past or around a police road block.  Ultimately, Petitioner stopped on a bridge, exited his vehicle with his young daughter, and took her to the edge of the bridge.  When confronted by police, Petitioner either voluntarily handed his daughter to police (Petitioner's contention) or had her pulled away from his grasp by police (police testimony at trial).  Petitioner then jumped into the Kentucky River, and a State trooper pulled him from the water.

Police transported Petitioner to the hospital and then to the police station.  The authorities questioned Petitioner at both locations.  Per trial testimony, the police observed Petitioner as being awake, coherent, and alert throughout the process.  During the interviews, Petitioner admitted to killing his ex-wife.

Subsequently, a grand jury issued an indictment charging Petitioner with one count each of murder, attempted murder, first-degree fleeing or evading police, first-degree assault, and kidnapping.  The indictment also included three counts of first-degree wanton endangerment. Petitioner pled not guilty and proceeded to trial by jury.  Petitioner put on evidence to support an insanity defense, to include expert testimony from Dr. Frank DeLand, a psychiatrist from the Kentucky Correctional Psychiatric Center.   The Commonwealth's rebuttal witnesses were

several police officers that had interacted with Petitioner immediately prior to and following his leap into the river.

## B. Judgment

After a five-day trial lasting from July 25, 2005, through July 30, 2005, the jury convicted Petitioner of murder, first-degree fleeing and evading police, fourth-degree assault (of his young daughter), kidnapping (of his young daughter), and three counts of wanton endangerment (of his young daughter and two troopers).  *Commonwealth v. Oliver*, 04-CR-00180, at 3-4 (Perry Cir. Ct. Oct. 13, 2005), available at D.E. 16-13 (Judgment and Sentence). The jury acquitted him of attempted murder (of his young daughter).  *Id.* at 3.

After further deliberation, the jury recommended an imprisonment term of thirty (30) years for the murder conviction, one (1) year for the first-degree fleeing and evading police conviction, three (3) years each for the three first-degree wanton endangerment convictions, twelve (12) months for the fourth-degree assault conviction, and ten (10) years for the kidnapping conviction.  *Id.* at 4-6.  The jury further recommended that Petitioner serve all of the aforementioned sentences concurrently.  *Id.* at 6.  On October 11, 2005, Judge Engle sentenced Petitioner in accordance with the jury's verdict.  *Id.* at 8-9.

## C. Direct Appeal

Following the return of the guilty verdict, judgment, and sentencing, Petitioner, through counsel, filed an appeal.  *See* Brief for Appellant, available at D.E. 16-10 (i-vi, 1-9), 16-11 (10-25), & 16-12 (26-35).[2]  On appeal, Petitioner raised five grounds for relief.  First, Petitioner argued that the trial court erred by refusing to grant a motion for a directed verdict on all charged offenses based on Petitioner's mental state.  *Id.* at 15-21.  Second, Petitioner argued that the trial

---

[2]        Any page references to the Brief for Appellant in this Recommended Disposition will correspond to the page numbers of the original brief rather than the CM-ECF pagination or the composite pagination created by Respondent's counsel for the entirety of the documents contained in Docket Entry 16.

court erred by failing to instruct the jury on the defense of self-protection as to the murder and attempted murder charges. *Id.* at 21-24. Third, Petitioner cited as error the trial court's evidentiary ruling prohibiting testimony as to the victim's suspicion that Petitioner was mentally ill. *Id.* at 24-27. Fourth, Petitioner argued that misleading and highly inflammatory testimony from Deputy Coroner Clayton Brown justified a mistrial; thus, per his argument, the trial court erred by refusing to grant a mistrial. *Id.* at 27-33. As a fifth and final ground, Petitioner argued that the trial court erred in failing to instruct the jury on presumption of innocence relative to the extreme emotional disturbance manslaughter charge. *Id.* at 34-35. The Commonwealth responded in opposition and urged the Supreme Court of Kentucky to uphold Petitioner's conviction and sentence. *See* Brief for Commonwealth, available at D.E. 16-8.

On September 18, 2008, the Supreme Court of Kentucky issued a Memorandum Opinion affirming Petitioner's conviction and thirty-year sentence. *Oliver v. Commonwealth*, No. 2005-SC-000864-MR, at 1 (Ky. Sept. 18, 2008) (unpublished).[3] The Supreme Court of Kentucky addressed each of the five grounds for relief raised by Petitioner in his appellate brief.

Addressing first Petitioner's argument that he was entitled to a directed verdict based on an insanity defense, the Supreme Court of Kentucky began by acknowledging the heavy burden and risk of mounting such a defense. *Id.* at 4 ("We have made it clear that a defendant relying upon an insanity defense 'bears the risk of not persuading the factfinder that he was in fact insane at the time of the incident.'") (internal citation omitted). Additionally, given the directed verdict context, Petitioner, to obtain appellate relief, was required to demonstrate that "'it would be clearly unreasonable for a jury to find against the defendant on the issue of sanity.'" *Id.* (internal citation omitted). Ultimately, the Supreme Court of Kentucky found that Petitioner

---

[3]     Specific page number citations correspond to the original pagination in the Supreme Court of Kentucky's Memorandum Opinion rather than CM-ECF pagination or the comprehensive pagination created by Respondent for all documents filed under Docket Entry 16.

failed to meet that "stringent standard." *Id.* While recognizing that Petitioner presented a "substantial amount of evidence to support his claim of being not criminally responsible . . . because of his mental illness," to include a psychiatrist (Dr. Frank DeLand) employed by the Kentucky Correctional Psychiatric Center, *id.*, the Supreme Court of Kentucky also noted that the Commonwealth presented contrary evidence in the form of "testimony of several police officers who interacted with Oliver soon after he killed Sandra." *Id.* at 5. Those officers testified that Petitioner "appeared alert and coherent" and that the local hospital did not refer Petitioner for psychiatric care or evaluation. *Id.* In addition to this testimony, the jury heard, via a recorded police interview, Petitioner's "own voice as he calmly recited the grisly account of the killing." *Id.* The Supreme Court of Kentucky noted that, under "settled precedent," the Commonwealth properly relied on lay witness testimony rather than calling a competing mental health expert. Thus, "[a]lthough the expert testified differently, the lay testimony presented by the Commonwealth indicating that Oliver did not appear to be behaving irrationally shortly after he killed Sandra was enough to submit the issue of Oliver's insanity to the jury." *Id.*

Turning next to Petitioner's claim that he was entitled to a self-defense jury instruction on the murder charge, the Supreme Court of Kentucky agreed with the trial judge's decision not to provide such an instruction. *Id.* at 9. In reaching its decision, the Supreme Court of Kentucky noted that the only eye-witness testimony supporting a self-defense instruction was that of Petitioner, who testified that "he was in the bathroom attempting to clean up his daughter when Sandra hit him with the bat. . . . Oliver further testified that he grabbed the bat from Sandra and struck her repeatedly with it. Oliver characterized his actions as having been taken in self-defense." *Id.* An officer also "testified that Oliver had a small abrasion or contusion above one eye." *Id.* However, other evidence presented at trial led the trial court to conclude that Petitioner

"could not make a reasonable case from his own point of view that he believed he was acting in self-protection given the extreme nature of the acts he committed." *Id.* at 8. Specifically, the Supreme Court of Kentucky described the pertinent facts as follows:

> The evidence, however, showed that the victim had been hit in the head multiple times, that she had marks on her throat showing she was choked, and that water had been run down her throat in the bathtub. In fact, the medical examiner testified that the victim's death was the result of blunt force trauma to the head <u>and</u> drowning. In his own statement to the police, Oliver claimed that while the victim hit him once with the bat, he admitted taking the bat and striking her "pretty hard" seven or eight times. These blows were to the <u>back</u> of her head. There was evidence that after he beat her into unconsciousness, he choked her and put her in the bathtub, where he ran water into her mouth causing her to drown. There was no evidence of a struggle in the apartment. Oliver even told one of the officers at the scene, "It's cold-blooded murder, I killed her."

*Id.* at 7 (emphasis original). In short, the Supreme Court of Kentucky found that the physical evidence undermined any contention that Petitioner killed the victim because he was in imminent danger, an element required to qualify for a self-protection jury instruction; thus, the trial court did not abuse its discretion. *Id.* at 8 ("At the point when Oliver disarmed the victim, he was no longer in a position to claim that he was meeting force with force, appropriate or not, but rather he was using force <u>after</u> force." (emphasis original)).

The Supreme Court of Kentucky also found that the trial court did not abuse its discretion when it refused to permit testimony concerning the victim's suspicion that Petitioner was mentally ill. *Id.* at 9. During the trial, Petitioner's supervisor attempted to testify to statements made by the victim "in the days immediately before her death . . . express[ing] concern for Oliver." *Id.* The Commonwealth objected on hearsay grounds, and the trial court refused to allow the supervisor to testify about statements allegedly made by the victim. *Id.* at 9-10. In his appellate brief, Petitioner argued that the statement was admissible under a hearsay exception allowing for the declarant's (here, the victim's) then-existing state of mind or as a present sense

impression, and that the statement bolstered his insanity/mental illness defense.  *Id.* at 10.  The trial court and the Supreme Court of Kentucky agreed that the statement at issue did not fit either exception.  Specifically, the victim allegedly told Petitioner, "[I]t's not your liver we are worried about.  It's your head."  *Id.* (internal quotation omitted).  Per both State courts, the statement did "not relate to the state of mind of Sandra (the declarant)," and the statement was not a present sense impression because "Sandra's statement . . . was not . . . a description or explanation; rather, it was an insult aimed at Oliver."  *Id.*  Thus, the Supreme Court of Kentucky found that the trial court's decision not to allow the testimony did not constitute an abuse of discretion.  *Id.* at 11.

As for Petitioner's fourth ground on appeal, the Supreme Court of Kentucky found that the trial court did not err when it refused to grant a mistrial based on the incorrect testimony of deputy county coroner Clayton Brown.  *Id.*  At trial, Brown testified, pursuant to his report, that "Sandra's skull was cracked and that her hair was wet with blood and brain matter."  *Id.*  Petitioner's counsel objected when "the Commonwealth asked a follow-up question about what happens when a skull is fractured" and also "objected that Brown was not a medical expert and that the medical examiner's report did not indicate that Sandra's skull was fractured."  *Id.*  The trial court initially overruled the objections, but, following an in-chambers conference wherein Petitioner's counsel expressed dismay that the Commonwealth "intentionally presented inaccurate testimony," the trial court denied Petitioner's motion for a mistrial.  *Id.* at 11-12.  When his testimony resumed, Brown

> testified that he agreed with the medical examiner's conclusion that Sandra had not suffered a skull fracture.  Brown then attempted to rationalize his testimony from the preceding day by stating that he had not been asked whether he now believed his report, which he had prepared at a time closer to Sandra's death, to be erroneous.

*Id.* at 12. In its review of this event, the Supreme Court of Kentucky agreed with Petitioner that the Commonwealth "should not have knowingly presented Brown's inaccurate testimony without attempting at least to explain the discrepancy between the testimony of Brown and the report of the medical examiner." *Id.* However, the Supreme Court of Kentucky found that a mistrial, given its "drastic" nature, was not an appropriate cure for this inaccurate testimony. As a basis for its finding, the Supreme Court of Kentucky stated as follows:

> Oliver did not object when Brown's report, which contained the objectionable reference to exposed brain matter, was displayed to the jury. And Oliver did not object when Brown referred to Sandra's hair as being wet with brain matter. So Oliver has failed to preserve any error regarding Oliver's reference to exposed brain matter. Furthermore, Brown eventually endorsed the medical examiner's conclusion that Sandra's skull had not been fractured. In fact, Brown's earlier statements to the contrary may well have inured to Oliver's benefit because Brown's quick about-face, coupled with the medical examiner's conclusive testimony that Sandra had not suffered a broken skull and that no brain matter had leaked from Sandra's skull, could have served to discredit Brown and, by extension, the Commonwealth's case. Additionally, the importance of Brown's testimony was minimal, at best, because Oliver admitted to killing Sandra and to striking her in the head with a bat. Moreover, Oliver had the opportunity to cross-examine Brown vigorously.

*Id.* at 13. Additionally, the Supreme Court of Kentucky found that Petitioner could not show that he suffered real prejudice because any allegation that the jurors deliberated with visions of a fractured skull and leaking brain matter was "sheer speculation." *Id.* at 14.

Finally, the Supreme Court of Kentucky also rejected Petitioner's claim that the jury instructions regarding the presumption of innocence constituted palpable error. *Id.* At trial, the jury received an instruction on the murder charge that "did not contain language stating that if it believed beyond a reasonable doubt that Oliver was guilty of intentional murder but had reasonable doubt whether Oliver was acting under EED [extreme emotional disturbance] when he killed Sandra, the jury should return a verdict on first-degree manslaughter, not murder." *Id.* While this instruction was warranted according to the Supreme Court of Kentucky, Petitioner did

not object, thereby limiting the Supreme Court of Kentucky's review to palpable error. *Id.* at 14-15. Citing similar precedent, the Supreme Court of Kentucky found that the lack of the aforementioned instruction did not adversely affect Petitioner's rights because the jury was instructed not to convict him of murder unless the jury believed beyond a reasonable doubt that Petitioner did not act under extreme emotional disturbance. *Id.* at 15. Thus, the Supreme Court of Kentucky denied Petitioner appellate relief on this ground as it had on the previous four grounds.

Following this adverse decision, Petitioner filed a petition for a rehearing. The Supreme Court of Kentucky denied that petition on January 22, 2009. *Oliver v. Commonwealth*, No. 2005-SC-000864-MR (Ky. Jan. 22, 2009), available at D.E. 16-4.

### D. Post-Conviction Relief

Following completion of the appellate process, Petitioner filed a Motion to Vacate, Set Aside or Correct the Judgment under RCr 11.42. The record is unclear as to whether Petitioner filed this motion pro se or with the assistance of counsel. The Commonwealth apparently responded. Respondent in the instant section 2254 proceeding did not file in the record copies of the briefs filed by either party in the RCr 11.42 action.

Having received and reviewed briefing from both parties, the Perry Circuit Court found that Petitioner was not entitled to an evidentiary hearing. *Commonwealth v. Oliver*, No. 04-CR-00180, at 1 (Perry Cir. Ct. July 30, 2009), available at D.E. 16-3 (Order). The circuit court indicated that Petitioner had raised two grounds of ineffective assistance of counsel. First, Petitioner argued that trial counsel was ineffective for failing to object to the trial court's jury instruction on extreme emotional disturbance. *Id.* The circuit court denied relief, stating that the Supreme Court of Kentucky had already considered and rejected such an argument on appeal.

*Id.* The circuit court also found that Petitioner "has failed to show a reasonable likelihood that the failure to give a more detailed instruction relating to extreme emotional disturbance would have changed the result of the trial." *Id.*

As a second ground for relief, Petitioner argued that trial counsel rendered ineffective assistance by failing to move for a venue change. *Id.* The circuit court denied relief on this ground, stating, "A detailed voir dire of the jury panel was conducted, and a jury was empaneled. There is no showing that there is a reasonable likelihood that counsel's failure to ask for a change of venue would have changed the result of the trial." *Id.*

The Perry Circuit Court issued its order denying RCr 11.42 relief on July 30, 2009. *Id.* at 2. Nothing in the record indicates that Petitioner filed an appeal.

## II. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (hereinafter "AEDPA") amended 28 U.S.C. § 2254 and established a "'highly deferential standard for evaluating state-court rulings,' which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)). Specifically, section 2254 states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

The "contrary to" and "unreasonable application" clauses of subsection (1) have independent meaning; thus section 2254(d)(1) establishes "two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court." *Williams v. Taylor*, 529 U.S. 362, 404 (2000); *Bell v. Cone*, 535 U.S. 685, 694 (2002) (discussing *Williams*).  A State court decision is "contrary to . . . clearly established Federal law," 28 U.S.C. § 2254(d)(1), when a "state court arrives at a conclusion opposite to that reached by this Court on a question of law. . . . [or] if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" to the Supreme Court.  *Williams*, 529 U.S. 405.  By contrast, "an unreasonable application," 28 U.S.C. § 2254(d)(2), occurs when a State court "identifies the correct governing legal rule . . . but unreasonably applies it to the facts of the particular state prisoner's case" or when a State court "either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply."  *Williams*, 529 U.S. at 407.  A petitioner seeking habeas relief bears the burden of "demonstrat[ing] that his case satisfies" one of the section 2254(d) categories.  *Williams*, 529 U.S. at 403.

As an additional measure of deference, AEDPA also provides that "a determination of a factual issue made by a State court shall be presumed to be correct."  28 U.S.C. § 2254(e)(1).  In order to overcome this presumption, a petitioner must rebut the presumption "by clear and convincing evidence."  *Id.*  Findings of fact entitled to the presumption include "[p]rimary or historical facts found by state courts," *Boggs v. Collins*, 226 F.3d 728, 736 (6th Cir. 2000), as well as factual findings made by State appellate courts based upon the trial record.  *Bowling v. Parker*, 344 F.3d 487, 497 (6th Cir. 2003) (citing *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981).

The presumption of correctness also applies to underlying facts in support of a State court decision involving a mixed question of law and fact. *See, e.g., Strickland v. Washington*, 466 U.S. 668, 698 (1984) (requiring deference to "state court findings of fact made in the course of deciding an ineffectiveness claim" even though "both the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact").

As a final measure of deference and respect for federalism, AEDPA forbids a federal district court from granting a section 2254 petition containing claims that a petitioner failed to raise in the State courts. Per the statute:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
> > (A) the applicant has exhausted the remedies available in the courts of the State; or
> > (B)(i) there is an absence of available State corrective process; or
> > (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1)(A)-(B). Thus, to receive relief under section 2254, a petitioner must first afford the State courts an opportunity to rule upon his trial-related claims.

### III. Analysis

In this section 2254 action, Petitioner lists four (4) grounds for relief on the standard form and twenty-seven (27) numbered items in his supporting memorandum. D.E. 5; D.E. 5-1. As previously noted, Petitioner is proceeding pro se; thus, the Court holds his filings to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 596 (1972); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("The handwritten pro se document is to be liberally construed."); *see also* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice."). Petitioner's thirty-one (31) numbered items are often repetitive and lack clarity. Moreover, many of the twenty-seven items listed separately in the supporting memorandum are

merely facts to purportedly support a specific claim for relief.  The Court also notes that grounds 2 and 4 on the standard form seem to be one claim.  D.E. 5, at 7, 10.

In an attempt to add clarity to the instant petition while ensuring that each purported claim is addressed, the Court, in its liberal interpretation of the petition and supporting memorandum, identifies the following claims for section 2254 relief: 1) wrongful denial of a directed verdict as to all counts based on Petitioner's insanity or mental illness; 2) lack of sufficient evidence to support conviction for assaulting his young daughter; 3) wrongful denial of a self-protection jury instruction as to the murder charge; 4) improper jury instruction related to extreme emotional distress as to the murder charge; 5) wrongful exclusion of testimony concerning statements made by the victim about Petitioner's mental health; 6) wrongful denial of mistrial to cure false testimony from the deputy county coroner; 7) ineffective assistance of trial counsel based on a failure to request the dashboard video from the arresting officers' cruiser; 8) ineffective assistance of trial counsel based on a failure to object to false testimony from the deputy county coroner; and 9) ineffective assistance of trial counsel based on a failure to recall Dr. Finke during trial.[4]  For reasons discussed below, the Court finds that Petitioner is not entitled to relief under 28 U.S.C. § 2254.

---

[4]     Petitioner includes some other statements that neither provide factual support for any of the nine listed claims nor constitute a cognizable claim for section 2254 relief.  First, Petitioner alleges that "several issues that were raised in RCR 11.42 were not addressed at all."  D.E. 5-1, at 1.  Relatedly, Petitioner states that "several issues were not put into RCR. 11.42 motion" and that his "RCR. 11.42 motion was not supposed to be sent out due to lack of completion."  *Id.*  To the extent that these statements are included to allege an ineffective assistance of counsel claim, the Court addresses them later in this Recommended Disposition.  Also, to the extent that these statements serve as justification for a failure to exhaust state remedies or to overcome any procedural default finding, the Court addresses the merits of specified claims as warranted by the record.

Petitioner also states "that Ms. Oliver [the victim] had 1.2 mg/liter of methadone in her system[;] this is a level that could be fatal."  *Id.* at 8.  The purpose of this statement is unknown, but it seems to allege an alternative explanation for the victim's death.  At trial, Petitioner pursued a defense strategy based on insanity and, as to the murder charge, self-protection.  Petitioner presents section 2254 claims related to each.  Any suggestion that the victim had methadone in her system at the time of her death is not related to any other claim in the instant section 2254 petition, and this stage of review is not an appropriate venue to proffer new theories or defenses relying on such facts.  Thus, the Court finds that, even under a liberal reading of the petition, this statement does not constitute a potential claim for relief.

A. Sufficiency of Evidence

Two of the aforementioned grounds for relief can be appropriately characterized as challenging the sufficiency of the evidence.  First, Petitioner presents facts and arguments in support of his claim that the trial court erred by failing to grant a directed verdict on all counts based on Petitioner's insanity or mental illness.  D.E. 5, at 7-8; *id.* at 10-11; D.E. 5-1, at 2 (¶¶ 4-5); *id.* at 4-9 (¶¶ 10, 12, 15, 18-23, 27).  Second, Petitioner also seeks habeas relief based on a claim that the jury lacked sufficient evidence to convict him of assaulting his young daughter. D.E. 5-1, at 8 (¶ 26).

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  *In re Winship*, 397 U.S. 358, 364 (1970).  Thus, a section 2254 petitioner "is entitled to habeas relief if it is found that upon the record evidence adduced at trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 324 (1979).  Put another way, the court's role is to "determine whether it was objectively unreasonable for the state court to conclude that a rational trier of fact, after viewing the evidence in the light most favorable to the state, could have found that [defendant] committed the essential elements of the crimes charged beyond a reasonable doubt."  *Saxton v. Sheets*, 547 F.3d 597, 601-02 (6th Cir. 2008) (quotation omitted).  Importantly, the court tests for evidentiary sufficiency "under *Jackson*" and, only upon a finding of insufficiency, "must then apply AEDPA deference and ask whether the state court was 'objectively unreasonable.'" *Id.* at 602.  The standard in *Jackson* applies "with explicit reference to the criminal offense as defined by state law."  *Id.* at 606 (quoting *York v. Tate*, 858 F.2d 322, 327 (6th Cir. 1988)).

Courts analyze directed verdict/sufficiency of the evidence claims under the "unreasonable application" category of section 2254(d)(1). *Thompson v. Bock*, 215 F. App'x 431, 435-36 (6th Cir. 2007) ("[R]elief is only available when the decision results in an objectively unreasonable application of federal law."); *Tinsley v. Million*, 399 F.3d 796, 815 (6th Cir. 2005). The assessment of unreasonableness also implicates AEDPA's required deference to State court factual findings. *Saxton*, 547 F.3d at 607 (noting burden on petitioner to "rebut presumption of correctness with clear and convincing evidence"). Furthermore, a section 2254 petition does not serve as a vehicle to relitigate a claim previously adjudicated on its merits by a State court. *Thompson*, 215 F. App'x at 436.

### 1. Insanity Defense/Denial of Directed Verdict

Kentucky law defines "insanity" as follows: "as a result of mental condition, lack of substantial capacity either to appreciate the criminality of one's conduct or to conform one's conduct to the requirements of law." KRS § 504.060(5). When offering insanity as a defense, the defendant bears the burden of proof, and the Commonwealth need not disprove any element of the defense "unless the evidence tending to support the defense is of such probative force that in the absence of countervailing evidence the defendant would be entitled to a directed verdict of acquittal." KRS § 500.070(1); KRS § 504.020(3). The Commonwealth is not required to present testimony from an opposing expert, but may instead choose to counter a defendant's expert witness testimony with contrary testimony from lay witnesses. *Port v. Commonwealth*, 906 S.W.2d 327, 330 (Ky. 1995) ("The relevant determining factor is not whether there needed to be expert testimony presented in rebuttal. . . . Rather the issue we address is whether the evidence presented on the record, inclusive or exclusive of expert testimony, was sufficient to present a jury issue, thereby defeating appellant's directed verdict motion.").

Here, Petitioner argues that he should have received a directed verdict on all charges as a result of his insanity defense.  Petitioner presented this argument on direct appeal, and the Supreme Court of Kentucky, after discussing the trial evidence on Petitioner's sanity produced by both sides, found that Petitioner was not entitled to a directed verdict.  In his section 2254 petition and supporting memorandum, Petitioner largely repeats the argument that he put forth on appeal.  Specifically, Petitioner emphasizes that two expert witnesses testified that Petitioner's mental state at the time of the murders supported an insanity defense.  D.E. 5, at 7; D.E. 5-1, at 4, 6-9.  He also references lay opinions regarding his mental state, but these statements were either ruled inadmissible as hearsay or had limited evidentiary value at trial.

Nothing in the petition serves to undermine either the trial court decision to deny Petitioner's motion for a directed verdict or the jury's decision to reject Petitioner's insanity defense so as to amount to an unreasonable application of federal law.  First, the Supreme Court of Kentucky accurately identified the correct federal standard as to the denial of a directed verdict.  *Oliver*, 2005-SC-00864-MR, at 4 n.5.  Next, the Supreme Court of Kentucky acknowledged that Petitioner presented expert testimony to support his insanity defense, but it correctly noted that, under Kentucky law, the Commonwealth could avoid a directed verdict by countering Petitioner's experts with the testimony of lay witnesses.  *Id.* at 4-5.  Thus, the Commonwealth properly relied on "testimony of several police officers who interacted with Oliver soon after he killed Sandra."  *Id.* at 5.  As noted previously, the testifying officers described Petitioner as "alert and coherent" and also testified that the local hospital did not refer Petitioner for psychiatric care or evaluation.  *Id.*  Moreover, the Commonwealth also played a recorded police interview, allowing the jury to hear Petitioner's "own voice as he calmly recited the grisly account of the killing."  *Id.*  Taken together, this evidence contradicting the findings of

Petitioner's expert witnesses was sufficient to present the issue of Petitioner's mental status to the jury, and a rational trier of fact could have found that Petitioner was not insane.  In sum, the Supreme Court of Kentucky's decision to affirm the trial court's denial of Petitioner's motion for a directed verdict was not an unreasonable application of federal law, and Petitioner is not entitled to habeas relief.

### 2. Assault Conviction Against Young Daughter

Petitioner also argues that he should not have been convicted of assaulting his young daughter.  In his supporting memorandum, Petitioner states, "The defense called six witnesses.  It also introduced a certified copy of medical records from UK medical center relating to [Petitioner's young daughter] which stated that she suffered from no physical injury."  D.E. 5-1, at 6.  He also notes that testimony from a paramedic differed from the hospital report; apparently, the paramedic testified that Petitioner's young daughter had "a bruise on her nose . . . [and] a knot on her forehead."  *Id.* at 8.  Because Petitioner failed to raise this claim in the State courts, this claim is unexhausted and procedurally defaulted.

As previously noted, section 2254(b) requires a State prisoner to exhaust his or her state court remedies before raising a claim in a federal habeas proceeding.  *Williams v. Bagley*, 380 F.3d 932, 967 (6th Cir. 2004) (requiring a petitioner to "'give the state courts one full opportunity to resolve any constitutional issues'" (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)).  To fulfill this prerequisite, a petitioner must submit all claims to the "highest court in the state in which [he or she was] convicted."  *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994) (internal quotation omitted).  However, Kentucky Rule of Criminal Procedure 12.05 provides that "when [a] claim has been presented to the [appropriate] appellate court, and relief has been denied, the litigant shall be deemed to have exhausted all available state remedies for that claim."

Ky. R. Crim. P. 12.05.  If a petitioner fails to raise a claim in State court, and "at the time of the federal habeas petition, State law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted."  *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).

As a general rule, a federal court may reach the merits of a procedurally defaulted claim if "the petitioner demonstrates cause for the default and prejudice resulting therefrom, or that failing to review the claim would result in a fundamental miscarriage of justice."  *Williams*, 460 F.3d at 805-06; *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).  A petitioner may also show "actual innocence" to overcome procedural default for a federal habeas claim.  *Schulp v. Delo*, 513 U.S. 298, 327 (1995) (requiring "a petitioner to show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt").

Here, Petitioner failed to raise this issue on appeal or in his motion for post-conviction relief.  His section 2254 petition does not provide any actual evidence to support habeas relief, nor does he provide any explanation to excuse his failure to raise this claim in the Kentucky State courts.  Moreover, Petitioner has already gone through the appellate process, and his judgment became final over three years ago; thus, Kentucky law bars him from revisiting this argument in the Kentucky courts.  *See* Ky. R. Crim. P. 11.42(10).  In short, Petitioner's claim is unexhausted and procedurally defaulted.

Even if the Court was able to reach the merits, Petitioner is not entitled to relief. Petitioner merely points out that the jury heard two different stories regarding physical injuries suffered by Petitioner's young daughter.  At trial, the role of the jury is to assess conflicting evidence and render a verdict.  Petitioner may be dissatisfied with the jury's determination, but a mere statement that a paramedic's testimony differed from the contents of hospital records does not provide a basis for relief under section 2254.

To conclude, Petitioner is not entitled to habeas relief based on the trial court's denial of his motion for a directed verdict. Petitioner is also not entitled to relief on an unexhausted, procedurally defaulted claim that his conviction for assaulting his daughter was based on insufficient evidence.

<u>B. Jury Instructions</u>

Petitioner also urges the Court to grant habeas relief based on the trial court's failure to provide two specific jury instructions. First, Petitioner asserts that he was entitled to a self-defense instruction on the murder charge. Secondly, Petitioner argues that the trial court erred by failing to provide a proper jury instruction as to the interaction between murder and extreme emotional disturbance (EED). Petitioner raised both of these grounds on appeal, and the Kentucky Supreme Court affirmed the trial court and rejected Petitioner's claims. For reasons discussed below, Petitioner is not entitled to section 2254 relief on either ground.

According to the Supreme Court, "a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor." *Matthews v. United States*, 108 S. Ct. 883, 887 (1988). In the habeas context, "[a] claim that a trial court failed to give a jury instruction is not cognizable . . . unless the omission 'so infected the entire trial that the resulting conviction violates due process.'" *Hudson v. Berghuis*, 174 F. App'x 948, 955 (6th Cir. 2006) (quoting *Henderson v. Kibbe*, 97 S. Ct. 1730, 1737 (1977)). Importantly, a trial judge's "failure to give a defense instruction 'does not deprive the defendant of his constitutional right to due process if the evidence produced during trial was insufficient to warrant such an instruction.'" *Grimes v. Wells*, No. 91-1532, 1991 WL 270830, at *3 (6th Cir. Dec. 17, 1991) (unpublished) (quoting *Allen v. Morris*, 845 F.2d 610, 617 (6th Cir. 1988)).

When undertaking habeas review of a State criminal conviction, the Court will not "reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 112 S. Ct. 475, 480 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."). Instead, the Court will defer to the State court's application of State law unless the application is "so fundamentally unfair as to violate the petitioner's due process rights." *Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2001) (citing *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000)).

### 1. Self-Protection Defense

Here, the Court finds that the Supreme Court of Kentucky did not unreasonably apply federal law or act in a "fundamentally unfair" manner. As previously noted, a trial judge does not violate due process by refusing to instruct a jury on a defense only supported by insufficient evidence. Under Kentucky law,

> (1) The use of physical force by a defendant upon another person is justifiable when the defendant believes that such force is necessary to protect himself against the use or imminent use of unlawful physical force by the other person.

> (2) The use of deadly force by a defendant upon another person is justifiable under subsection (1) only when the defendant believes that such force is necessary to protect himself against death, serious physical injury, kidnapping, sexual intercourse compelled by force or threat, felony involving the use of force, or under those circumstances permitted pursuant to KRS 503.055.[5]

KRS § 503.050. The trial judge presiding over Petitioner's case denied Petitioner's request to instruct the jury on the self-protection defense based on a determination that Petitioner had failed to make a reasonable case that the force used against the victim was justified. *Oliver*, 2005-SC-000864-MR, at 8.

---

[5] This referenced statute governs the use of defensive force regarding a dwelling, residence, or occupied vehicle. KRS § 503.055.

The Supreme Court of Kentucky's decision to affirm the trial court's decision on appeal was not an unreasonable application of federal law. Even though Oliver testified that the victim struck him first with a bat and a testifying officer confirmed the appearance of a small abrasion or contusion above one of Petitioner's eyes, *id.* at 7, the totality of the evidence detailing the force used in response shows that Petitioner's actions were not justified under KRS § 503.050. Per the Supreme Court of Kentucky,

> The evidence, however, showed that the victim had been hit in the head multiple times, that she had marks on her throat showing she was choked, and that water had been run down her throat in the bathtub. In fact, the medical examiner testified that the victim's death was the result of blunt force trauma to the head <u>and</u> drowning. In his own statement to the police, Oliver claimed that while the victim hit him once with the bat, he admitted taking the bat and striking her "pretty hard" seven or eight times. These blows were to the <u>back</u> of her head. There was evidence that after he beat her into unconsciousness, he choked her and put her in the bathtub, where he ran water into her mouth causing her to drown. There was no evidence of a struggle in the apartment. Oliver even told one of the officers at the scene, "It's cold-blooded murder, I killed her."

*Id.* Based on this record, the Court finds that the Supreme Court of Kentucky did not unreasonably apply any federal law in its decision to uphold the trial judge's denial of the self-protection instruction. Therefore, Petitioner is not entitled to habeas relief.

### 2. Presumption of Innocence

Petitioner also argues that the trial court erred by failing to instruct the jury to return a verdict of first-degree manslaughter if it believed beyond a reasonable doubt that Petitioner was guilty of intentional murder but had reasonable doubt about whether Petitioner was acting under extreme emotional distress during the murder. He raised this issue on appeal, but the Supreme Court of Kentucky reviewed the issue for palpable error because, as Petitioner admitted, Petitioner failed to "object to the trial court's failure to give the reasonable doubt instruction regarding EED. *Id.* at 14-15.

A State court's "failure to give a requested instruction on the presumption of innocence does not in and of itself violate the Constitution." *Kentucky v. Whorton*, 441 U.S. 786, 789 (1979) (per curiam). Rather, a State court's failure to instruct the jury on the presumption of innocence "must be evaluated in light of the totality of the circumstances," to include "all the instructions to the jury, the arguments of counsel, whether the weight of the evidence was overwhelming, and other relevant factors." *Id.*

Here, Defendant has procedurally defaulted this claim. Pursuant to a firmly established Kentucky procedural rule, unless the error is palpable, failure to make a contemporaneous objection at the trial level results in a loss of the issue for appeal. *Nichols v. Commonwealth*, 142 S.W.3d 683, 691 (Ky. 2004) ("Appellant admits that this claim of error was not preserved for appellate review by contemporaneous objection, but he urges this Court to conduct review under RCr 10.26. We decline to do so because an alleged error is not reviewable under RCr 10.26 unless (1) it is '[a] palpable error,' and (2) 'a determination is made that manifest injustice [has] resulted from the error.' Here, the claimed error is neither 'palpable' nor did 'manifest injustice' result from it.");[6] *see also Sherley v. Commonwealth*, 889 S.W.2d 794, 796 (Ky. 1994) (noting that "[t]he Federal courts have repeatedly refused to review alleged error where state courts have initially refused to consider the issue due to procedural default" and that failure to make a contemporaneous objection as required by a State procedural rule results in procedural default of the claim at issue absent a demonstration of cause and prejudice.). An error is palpable if it is "easily perceived or obvious." *Nichols*, 142 S.W.3d at 691.

---

[6]      Kentucky Rule of Criminal Procedure 10.26 states, "A palpable error which affects the substantial rights of a party may be considered by the court on motion for a new trial or by an appellate court on appeal, even though insufficiently raised or preserved for review, and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error."

Because of Petitioner's failure to object to the instruction at issue, the Supreme Court of Kentucky properly utilized an adequate and independent State procedural rule and reviewed this claim solely for palpable error.  The Supreme Court of Kentucky rejected Petitioner's argument, premising its decision on earlier precedent that was factually similar to Petitioner's case and applying the same analysis as it had done previously when a defendant was denied a presumption of innocence instruction but did not object at trial.  *See Martinez v. Ryan*, ___U.S.___, 132 S. Ct. 1309, 1316 (2012) ("A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed.").  Petitioner does not attempt to show cause for the procedural default. The Supreme Court of Kentucky properly invoked an adequate and independent State rule to limit review of this alleged error, and Petitioner's brief is silent as to cause for the default and any resulting prejudice.  Therefore, Petitioner is not entitled to relief.

In sum, Petitioner is not entitled to section 2254 relief based on alleged errors involving the omission of two distinct jury instructions.

### C. Trial Testimony

As an additional ground for habeas relief, Petitioner alleges that the trial court erred when it excluded, on the basis of hearsay, testimony concerning a statement made by the victim about Petitioner's mental health.  Petitioner presented this claim on appeal, and the Supreme Court of Kentucky affirmed the trial court's decision.

Petitioner also argues that the trial court erred by overruling defense counsel's objection to false testimony by a deputy county coroner and permitting further testimony and cross-examination as a curative measure rather than granting a motion for a mistrial.  Petitioner

presented this claim on appeal, and the Supreme Court of Kentucky affirmed the trial court's decision.

For reasons detailed below, Petitioner is not entitled to the relief sought as to either claim. Generally, a State trial court's evidentiary rulings are not cognizable under section 2254. Rather, a federal court may grant habeas relief only if a State court evidentiary ruling was "so fundamentally unfair" that the resulting conviction violated a petitioner's rights under the Due Process Clause of the Fourteenth Amendment. *Henness v. Bagley*, 644 F.3d 308, 326 (6th Cir. 2011) (citing *Bey v. Bagley*, 500 F.3d 514, 519-20 (6th Cir. 2007)). Additionally, when reviewing a State court's evidentiary ruling, a federal court "must defer to a state court's interpretation of its own rules of evidence and procedure." *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005) (internal quotation omitted).

### 1. Exclusion of Testimony as Hearsay

Like the Federal Rules of Evidence, the Kentucky Rules of Evidence (KRE) provide for certain hearsay exceptions, thereby allowing specific types of testimony, regardless of the declarant's availability to testify, that would otherwise be excluded. Ky. R. Evid. 803. Specifically relevant to Petitioner's case, the Kentucky Rules permit statements of a "declarant's then existing state of mind, emotion, sensation, or physical condition . . . ." *Id.* at 803(3). Additionally, the same evidentiary rule permits the introduction of a present sense impression, or "[a] statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." *Id.* at 803(1).

Citing both provisions of KRE 803, Petitioner argued on appeal that the trial court erred by prohibiting, as hearsay, testimony repeating a statement made by the victim in relative proximity to her death. Allegedly, the victim told Petitioner, "'[I]t's not your liver we are

24

worried about. It's your head.'" *Oliver*, 2005-SC-000864-MR, at 10. The Supreme Court of Kentucky disagreed with Petitioner's argument that this statement was admissible as either an existing mental, emotional, or physical condition or as a present sense impression. *Id.* at 10-11. To summarize the findings, the victim's statement did not go to the declarant's (victim's) state of mind (or anyone else's), and the victim's statement was not a direct impression of Petitioner's alleged mental illness; thus, the statement was not admissible as a hearsay exception. *Id.*

Nothing in the record suggests that the trial court's rulings created a trial so fundamentally unfair that it violated Petitioner's due process rights. At trial, Petitioner had a full opportunity to present his expert witnesses, lay witnesses, and documentary evidence in support of his insanity defense. The trial court's exclusion of the victim's alleged statement did not prohibit Petitioner from mounting an adequate defense to her murder and the other charged crimes. Because Petitioner received a fair trial, the Court will not disturb the reasoned judgments of the Kentucky State courts as to their own rules and procedures. Habeas relief is not warranted on this ground.

### 2. Deputy County Coroner Brown's Testimony

Petitioner also alleges that the trial court erred by overruling defense counsel's objection to Deputy County Coroner Brown's inaccurate testimony and by denying a related motion for a mistrial. When Petitioner raised this issue on appeal, the Supreme Court of Kentucky found that the trial court did not abuse its discretion in denying the motion for a mistrial and allowing Brown to continue to testify. *Id.* at 13-14. This decision was not an unreasonable application of federal law.

In the habeas context, a federal court will overturn a State trial court's decision not to grant a mistrial only if a witness's testimony "was potentially so misleading and prejudicial that

it deprived [the defendant] of a constitutionally fair trial." *Zuern v. Tate*, 336 F.3d 478, 485 (6th Cir. 2003) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 641-42 (1974)).   No broader review is appropriate unless a petitioner presents facts showing that "specific guarantees of the Bill of Rights are involved" and that the conduct in question "impermissibly infringes them." *See Donnelly*, 416 U.S. at 643.   When undertaking this "narrow" review, a federal court may consider the following factors:

> (1) whether the remark was unsolicited, (2) whether the government's line of questioning was reasonable, (3) whether the limiting instruction was immediate, clear, and forceful, (4) whether any bad faith was evidenced by the government, and (5) whether the remark was only a small part of the evidence against the defendant.

*Zuern*, 336 F.3d at 485 (citing *United States v. Forrest*, 17 F.3d 916, 920 (6th Cir. 1994)).   Per the Supreme Court of Kentucky,

> Brown eventually endorsed the medical examiner's conclusion that Sandra's skull had not been fractured.   In fact, Brown's earlier statements to the contrary may well have inured to Oliver's benefit because Brown's quick about-face, coupled with the medical examiner's conclusive testimony that Sandra had not suffered a broken skull and that no brain matter had leaked from Sandra's skull, could have served to discredit Brown and, by extension, the Commonwealth's case. Additionally, the importance of Brown's testimony was minimal, at best, because Oliver admitted to killing Sandra and to striking her in the head with a bat. Moreover, Oliver had the opportunity to cross-examine Brown vigorously.

*Oliver*, 2005-SC-00864-MR, at 13.   On these facts, Brown's testimony likely did more harm to the Commonwealth's case than to Petitioner's case.   Even though the Supreme Court of Kentucky questioned the strategy employed by the prosecutor in presenting Brown's testimony, nothing in the record suggests that the Commonwealth solicited the comments in bad faith. Also, because Brown was the deputy county coroner, the government's line of questioning concerning Brown's report, the display of which Petitioner's trial counsel did not object, was

reasonable.  Moreover, due to a series of objections, Brown's later retraction on the stand, and the medical examiner's conclusive testimony, Brown's earlier incorrect testimony was isolated.

The Court also notes that the other evidence presented at trial overwhelmingly implicated Petitioner in his ex-wife's murder.  Petitioner admitted to killing the victim and pursued an insanity defense, along with an attempted self-protection defense.  Additionally, other non-contested trial evidence indicated that Petitioner struck the victim repeatedly with a bat, choked her, and placed her in a bathtub to run water down her throat.  On the strength of that evidence, Brown's *refuted* testimony that the victim suffered a skull fracture that leaked brain matter cannot be characterized as overly prejudicial.  In short, the trial court's decision to allow further curative testimony and cross-examination in lieu of the extraordinary relief of declaring a mistrial did not create a fundamentally unfair trial.  Petitioner's due process rights are not implicated, and Petitioner is not entitled to habeas relief.

## D. Ineffective Assistance of Counsel

Petitioner alleges three grounds of ineffective assistance of counsel. [7]  He asserts that trial counsel failed to investigate the circumstances of his arrest, to make appropriate objections to harmful testimony, and to elicit key supportive testimony.   All three are unexhausted and procedurally defaulted.  Even on the merits, all three fail.

---

[7]     In his supporting memorandum, Petitioner also states that "several issues were not put into RCR. 11.42 motion[]" and that the RCR. 11.42 motion was not supposed to be sent out due to lack of completion."  D.E. 5-1, at 1.  Petitioner does not provide any further detail, and the Commonwealth did not file a copy of Petitioner's RCr 11.42 motion.  As noted previously, the Court is cognizant of Petitioner's pro se status; thus, the Court, erring on the side of caution, examines these statements in the ineffective assistance of counsel realm.  To the extent that Petitioner is alleging ineffective assistance of counsel as to his RCr 11.42 motion, the relief sought is denied.  The United States Constitution does not afford a right to counsel in State post-conviction proceedings.  *Coleman v. Thompson*, 501 US. 722, 752 (1991).  Because no constitutional right exists, any attorney error, if in fact Petitioner had the aid of counsel in filing his RCr 11.42 motion, "cannot be constitutionally ineffective" so as to require relief.  *Id.* at 753.

*1. Failure to Exhaust/Procedural Default*

To reiterate, a habeas petitioner must fully exhaust his or her claims prior to filing a section 2254 petition by submitting all claims to the "highest court in the state in which [he or she was] convicted." *Rust*, 17 F.3d at 160 (internal quotation omitted).  A failure to exhaust coupled with a State law prohibiting a petitioner from returning to State court to raise the claim constitutes procedural fault. *Williams*, 460 F.3d at 806.  Nevertheless, a federal court may reach the merits on a procedurally defaulted claim if the petitioner shows cause for and prejudice resulting from default, *id.* at 805-06, a fundamental miscarriage of justice, *id.*, or actual innocence. *Schulp*, 513 U.S. at 327.

A review of the record indicates that Petitioner failed to bring the instant claims of ineffective assistance of counsel before the Kentucky courts for a full round of review.  As noted previously, Petitioner appears to have filed a RCr 11.42 motion in Perry Circuit Court.  *Oliver*, No. 04-CR-00180.  Per the circuit court's order denying Petitioner's motion, Petitioner alleged that trial counsel rendered ineffective assistance by failing to object to an inadequate jury instruction related to extreme emotional disturbance and by failing to move for a change of venue.  *Id.* at 1.  The circuit court denied relief on both grounds, citing Petitioner's failure to prove prejudice.  *Id.*  Following that denial on July 30, 2009, Petitioner had thirty (30) days to appeal, Ky. R. Crim. P. 12.04(3), but he failed to do so.  In his 2254 petition, Petitioner does not allege ineffective assistance of counsel on the grounds denied by Perry Circuit Court.

Because Petitioner did not appeal the circuit court order, Petitioner has failed to exhaust the two ineffective assistance claims adjudicated by that State court.  Additionally, Petitioner never provided a State court with an opportunity to review the ineffective assistance of counsel claims listed in the instant section 2254 petition; thus, he has failed to exhaust those claims, too.

Moreover, all of his ineffective assistance are procedurally defaulted. Petitioner did not appeal the Perry Circuit Court order denying his RCr 11.42 motion, and the time for doing so, under Kentucky law, has expired. *See* Ky. R. Crim. P. 12.04(3). As for the ineffective assistance of counsel claims first raised here, they, too, are procedurally defaulted because a petitioner only has three years from a final judgment within which to file a RCr 11.42 motion. Ky. R. Crim. P. 11.42(10). On this record, Petitioner's judgment arguably became final on January 22, 2009, when the Supreme Court of Kentucky denied his petition for a rehearing. Thus, the three-year period for seeking State court relief has expired. In short, Petitioner's ineffective assistance of counsel claims are procedurally defaulted.

As previously noted, the Court can conduct a merits review of procedurally defaulted claims in certain limited circumstances. Petitioner provides no information beyond stating that his attorney "quit" to give cause for the default, and he is completely silent on resulting prejudice. The record is also devoid of any indication that a failure to review the merits would be manifestly unjust. Finally, Petitioner offers no proof of actual innocence necessary to require a merits review. The Court notes that Respondent clearly invoked failure to exhaust/procedural default defenses in its Answer, and Petitioner chose not to reply in accordance with the Court's order permitting such a brief. Thus, the Court is not required to conduct a merits review on Petitioner's ineffective assistance of counsel claims.

### 2. Merits Review

Even if Petitioner's claims were not procedurally defaulted, they would fail on a de novo review on the merits.[8] When asserting a claim of ineffective assistance of counsel, a petitioner must prove both deficient performance and prejudice. *Strickland*, 466 U.S. at 687. In order to

---

[8]     AEDPA deference would obviously not apply because these claims were not adjudicated on the merits by the State courts.

prove deficient performance, a petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* A petitioner meets this burden by proving "that counsel's representation fell below an objective standard of reasonableness" under "prevailing professional norms," taking into consideration all the circumstances. *Id.* at 688. Notably, the *Strickland* standard requires a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

In order for a petitioner to show that deficient performance by counsel was constitutionally prejudicial, the counsel's errors must have been "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. Prejudice exists when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 693. Without proof of deficient performance as well as prejudice to the defense's case, "it could not be said that the sentence or conviction resulted from a breakdown in the adversary process that rendered the result of the proceeding unreliable." *Bell*, 535 U.S. at 695. Courts must take into consideration the "totality of the evidence before the judge or jury" when evaluating prejudice. *Strickland*, 466 U.S. at 695.

First, Petitioner faults his trial counsel for failing to investigate the circumstances of his arrest, including requesting any dashboard video of the arrest, and to then present that evidence to the jury. Specifically, Oliver contends that, "if Defendants attorney would have asked for troopers in car video recorder[,] the court would have seen that Mr. Oliver not only gave his daughter to the troopers willingly but also did not try to . . . run troopers off the road," emphasizing that "this was not addressed by defendants counsel after several requests." D.E. 5-1, at 3. A defense attorney "'has a duty to investigate the circumstances of [his client's] case and

to explore all avenues relevant to the merits of the case . . . [including] mitigating circumstances surrounding the commission of the offense itself.'"  *Landrum v. Mitchell,* 625 F.3d 905, 929 (6th Cir. 2010) (quoting *Powell v. Collins*, 332 F.3d 376, 399 (6th Cir. 2003)).  This investigation may reasonably have included the dashboard video, which allegedly contained mitigating evidence of the circumstances leading up to Petitioner's arrest.  However, Petitioner fails to show any prejudice at trial from this alleged deficiency in his representation.  The record includes no evidence that this alleged error was so serious that Petitioner did not receive a fair and reliable trial.  Petitioner also does not show that, but for trial counsel's alleged failure to secure the dashboard video, the result of his trial would have been different.  Indeed, the Court notes that the jury acquitted him of attempted murder against his young daughter; thus, any mitigating evidence related to his purported willingness to turn her over to the officers would have been superfluous.  Therefore, by failing to prove prejudice, Petitioner has failed to meet his burden of showing ineffective assistance of counsel.

Next, Petitioner asserts that his trial counsel "should have objected to many of the things that was being testified by Mr. Brown but they chose not to in which they should have that would have helped Mr. Oliver."  D.E. 5-1, at 4.  This complaint lacks specificity.  Often, such decisions to exclude testimony from trial fit within the confines of a reasonable trial strategy; as the Sixth Circuit has pointed out, "experienced trial counsel learn that objections to each potentially objectionable event could actually act to their [client's] detriment."  *Lundgren v. Mitchell,* 440 F.3d 754, 774 (6th Cir. 2006).  Experienced defense attorneys "use objections in a tactical manner," balancing the potential for error with the jury's patience for numerous objections. *Id.*  Brown, the deputy county coroner who prepared a report of the victim's death, was called as a witness on behalf of the Commonwealth and gave inconsistent testimony at trial

as to whether he identified exposed brain matter on Sandra's skull.  *Oliver*, 2005-SC-000864-MR, at 11.  However, the Supreme Court of Kentucky's opinion on direct appeal reflects that, at trial, "Oliver then objected that Brown was not a medical expert and that the medical examiner's report" adduced different testimony.  *Id.*  Petitioner, through counsel, even filed a motion for a mistrial, although the trial court eventually overruled his objection and denied this motion.  *Id.* at 12.  Importantly, the Supreme Court of Kentucky also observed that "the importance of Brown's testimony was minimal, at best, because Oliver admitted to killing Sandra and to striking her in the head with a bat."  *Id.* at 13; *see Cobb v. Perini*, 832 F.2d 342, 348 (6th Cir. 1987) (per curiam) (holding that an attorney's failure to object to testimony about a defendant's confrontation with a police officer did not constitute ineffective assistance of counsel because the decision fell under strategic discretion and it was not clear that an objection would have been effective).

Even if trial counsel's failure to object was deficient, Petitioner fails to demonstrate a reasonable probability that the outcome of the trial would have been different with the sought objections.  Indeed, as the Supreme Court of Kentucky notes, Brown's eventual endorsement of the medical examiner's conclusive testimony "may well have inured to Oliver's benefit" as the quick change-of-position "could have served to discredit Brown and, by extension, the Commonwealth's case."  *Oliver*, 2005-SC-000864-MR, at 13.  Petitioner is not entitled to habeas relief on this claim of ineffective assistance of counsel.

Finally, Petitioner alleges that trial counsel was ineffective by failing to elicit additional testimony of Dr. Finke, whom Petitioner argues "should have been brought back to testify for the defense knowing [he] had relevant testimony."  D.E. 5-1, at 4.  This argument also fails.  Beyond the base assertion that trial counsel should have elicited further testimony from Dr. Finke,

Petitioner offers no facts to show that this testimony would have been helpful.  The petition also remains silent as to the purported content of Dr. Finke's follow-up testimony.   In short, Petitioner's statement that additional testimony from Dr. Finke "would have maybe helped his defense," *id.*, is mere speculation and falls far short of meeting the *Strickland* prejudice prong. *See Clark v. Walker,* 490 F.3d 551, 558 (6th Cir. 2007) (rejecting ineffective assistance claim where *habeas* petitioner only argued that missing witness's testimony "'would have aided his defense' – a claim considerably weaker than a demonstration of a likelihood of a different outcome at trial.").  As with the other claims of ineffective assistance, Petitioner fails to make a sufficient showing of prejudice.  In sum, the District Judge should deny requested relief on all ineffective assistance of counsel claims.

### V. Certificate of Appealability

Pursuant to Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, a district court must issue or deny a certificate of appealability (COA) when it enters a final order adverse to the applicant.  A COA may issue only if a petitioner has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  In cases where a district court has rejected constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) ("When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.").

In this case, reasonable jurists would not debate the denial of this section 2254 Petition, or conclude that the issues presented are adequate to deserve encouragement to proceed further. *See Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484). Accordingly, the Court **RECOMMENDS** that a certificate of appealability be **DENIED** if one is sought.

### VI. Conclusion

For reasons discussed above, the Court finds that Petitioner is not entitled to relief under 28 U.S.C. § 2254.  Therefore, the Court **RECOMMENDS** that Petitioner's petition for habeas corpus (D.E. 5) be **DENIED.**

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Recommended Disposition, issued under subsection (B) of the statute.  *See also* Rules Governing Section 2254 Proceedings, Rule 8(b).  Within fourteen days after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, de novo, by the District Court.  Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals.  *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

This the 9th day of August, 2012.

Signed By:

*Hanly A. Ingram*

United States Magistrate Judge